WARD *v*. THE HOME SAVINGS & LOAN CO. ET AL.

(Decided March 16, 1931.)

*Messrs. Schwab & Heiser,* for plaintiff and defendant the Home Savings & Loan Company.

*Mr. Bruce W. Bierce,* city solicitor, for defendant the City of Cuyahoga Falls.

FUNK, J. This case is in this court on appeal from

the judgment of the common pleas court, and was heard upon a transcript of an agreed statement of facts and the exhibits attached, all as used in the lower court, and some additional evidence in this court.

The uncontradicted facts, as appear from the agreed statement of facts and the exhibits, the pleadings, and the transcript of the docket and journal entries, are as follows:

On January 17, 1929, the defendant Richard A. Hewitt obtained the registered title to lot 269, situated at the northeast corner of West Broad street and South Eighteenth street in the city of Cuyahoga Falls, and has been owner in fee thereof from that time until disseized in this suit.

On September 17, 1929, the second mortgagee filed a petition against said Hewitt and wife to foreclose his mortgage on said registered lands, and made the first mortgagee, the Home Savings & Loan Company, and others, parties defendant. On the same day plaintiff, Edwin J. Ward, duly filed with the county recorder the certificate of the clerk showing said pending suit, which was entered as a memorial on the register of the title. Also on the same day, said Home Savings & Loan Company filed its answer and cross-petition, alleging that on March 13, 1929, the defendants Richard A. Hewitt and wife, Helen B., executed and delivered to it their mortgage for $5,000 for the purpose of constructing a house and garage on said lot; that on April 4, 1929, it filed said mortgage with the county recorder, and on the same day a memorial thereof was entered on the register of the title to said lot; and that it had advanced, on its said mortgage, the sum of $2,575, which amount

it asked, with interest at 8 per cent. on said $5,000 from March 13, 1929.

On October 21, 1929, on oral motion of plaintiff, the city of Cuyahoga Falls and others were made parties defendant.

On October 23, 1929, the house not having been completed, a decree was entered, by consent of all parties, on the petition and the answer and cross-petition of said loan company, reserving the rights and priorities of all parties, on which decree an order of sale was issued by consent of the parties. The property was sold at public auction on December 14, 1929, to said defendant Home Savings & Loan Company, as the highest bidder, for $2,801, which amount is being held for distribution on the determination of this suit.

On November 18, 1929, said city of Cuyahoga Falls filed its answer and cross-petition, setting up its claim.

On January 19, 1926, said city, by ordinance, levied an assessment for the paving of said West Broad street, the total amount of which levied against said lot is $797, payable in ten annual installments. The notice of the passage of said ordinance, provided for by Section 8572-56, General Code (Section 56 of the Torrens law), was not filed with the recorder until January 20, 1930.

It was conceded in oral argument that the first three annual assessments for the Broad street paving were certified to the county auditor and paid, and that the fourth annual assessment for 1929 was duly certified to the county auditor and placed on the tax duplicate for December, 1929, as provided by Section 3892, General Code.

On March 19, 1929, said city, by ordinance, levied an assessment for the paving of said Eighteenth street, the total amount of which levied against said lot is $453, payable in ten annual installments. The notice of the passage of this ordinance, provided for by Section 8572-56, General Code, was filed with the recorder on September 7, 1929, and the first assessment for the year 1929 was duly certified to the county auditor and placed on the tax duplicate for December, 1929, as provided by Section 3892, General Code.

All taxes and assessments charged against said premises on the tax duplicate have been paid, except those due June 20, 1929, and thereafter. There are six annual installments of the Broad street paving assessment, and nine annual installments of the Eighteenth street paving assessment, that were not due and payable and placed on the annual duplicate at the time of the hearing in the lower court.

The only questions presented are those arising between the defendants the Home Savings & Loan Company and the city of Cuyahoga Falls, which are:

First, what amount of said special assessments, if any, is payable from the proceeds of the sale?

Second, what amount, if any, of said special assessments is entitled to be carried forward to the new certificate of title to be issued to the purchaser at sheriff's sale?

. Counsel for the Home Savings & Loan Company contend that its mortgage is a prior lien to the seven unpaid assessments for the Broad street paving and all of the assessments for the Eighteenth street paving, and that neither of said special assessments or any part of them is entitled to be carried forward

and placed as a memorial on the new certificate of title to be issued to the purchaser at sheriff's sale.

This contention is based upon the fact that, at the time the defendant Richard A. Hewitt obtained his certificate of title, no memorial of said Broad street assessment had been entered upon the registered certificate of title of said land, as provided by said Section 8572-56, and upon the further fact that, at the time said mortgage was executed and delivered to said loan company, and by it filed with the recorder and entered as a memorial upon said registered certificate of title, no memorial of either of said assessments had been entered upon said registered certificate of said title. Said counsel further claim that this is especially so because special assessments are not designated as one of the exceptions mentioned in Section 8572-25, General Code, and, more especially, since "taxes" are so excepted.

Counsel for said city contends that said Broad street assessment, certified to the county auditor and by him placed on the tax duplicate for December, 1929, is entitled to be paid from the proceeds of the sale, because notice of the same had been filed with the recorder as provided by Section 8572-56, General Code, during the December, 1929, taxpaying period, which extended over January 20, 1930, when said notice was so filed, and accordingly the remaining six installments for the Broad street paving, which were not yet due and payable, should be carried forward and placed as a memorial on the new certificate to be issued to the purchaser at sheriff's sale.

Said counsel further claims that, as said Eighteenth street assessment was duly placed on the tax duplicate for December, 1929, and that as the notice

for said assessment had been duly filed with the county recorder prior to the second Monday in September, 1929, and placed as a memorial on the registered certificate of title, said December, 1929, installment should be paid from the proceeds of the sale, and that the remaining nine installments for the Eighteenth street paving should be carried forward and placed as a memorial on the new certificate to be issued to said purchaser.

There is no claim that the laws providing for the making of said improvements, and the levying of said assessments, and the placing of the same upon the tax duplicate for collection as other taxes are placed, have not been complied with by the proper city and county authorities, except the provisions of Section 8572-56 of the Registration of Land Act, commonly known as the Torrens system.

The laws of Ohio provide a method by which a municipality, by proper action of its council, may make certain public improvements, such as paving its streets, and assess the cost and expense of the same against private property, and by which it may designate when and how the same shall be payable and collected, and may make such assessments payable and collectable in a manner other than by placing them upon the tax duplicate, but, if council directs that such assessments be collected in annual installments and by placing them upon the tax duplicate, as provided by Section 3892, General Code, such direction must be followed.

The two ordinances providing for the assessments for paving said two streets, each granted the option of paying the total amount of said assessment in cash within thirty days after the passage of the or-

dinance, or in ten annual installments, plus interest, in which latter event said assessments were to be certified to the county auditor as provided by said Section 3892.

The two assessments were not paid in cash, and were thus each payable in the ten annual installments.

Section 3892, General Code, provides that, when such assessment is to be paid in installments, "the clerk of the council, on or before the second Monday in September, each year, shall certify such assessment to the county auditor, stating the amounts and the time of payment. The county auditor shall place the assessment upon the tax list in accordance therewith and the county treasurer shall collect it in the same manner and at the same time as other taxes are collected, and when collected, pay such assessment, together with interest and penalty, if any, to the treasurer of the corporation," etc.

Under Section 3897, General Code, special assessments become liens upon the respective lots assessed from the dates of the assessments, and under Section 3906, General Code, such liens continue for two years from the times payable "and no longer, unless the corporation" within that time causes such assessments to be certified to the county auditor to be placed upon the tax list for collection.

In the case of *State, ex rel. Brown, Treas.,* v. *Cooper,* 123 Ohio St., 23, 173 N. E., 725, the judge who wrote the opinion points out that the word "assessment" is used interchangeably with and is thus substantially synonymous with the word "taxes" in various sections of the General Code, and is so used in said Section 3892, and is also so used in some

opinions of the Supreme Court, and that court has on different occasions held that assessments are a species of tax; and in said case the court held that special assessments are taxes within the meaning of said Section 3892 and Section 2655, which latter section provides that "no person shall be permitted to pay one or more of such taxes without paying the others in like proportion, except only when the collection of a particular tax is legally enjoined," and, further, that said Section 3892 is mandatory upon the county treasurer to collect such assessments at the same time and in the same manner as other taxes, and that he is required to apportion the amount collected on taxes and assessments under the provisions of said Section 2655. It is thus clear that special assessments are taxes for collection purposes, when properly placed upon the tax duplicate.

The act providing for the "Registration of Land Titles," Section 8572-1 *et seq.*, General Code, prescribes in Section 8572-25:

"Every applicant who without fraud on his part receives a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, shall hold the same free from all estates and encumbrances except those noted on the certificate and any of the following estates and encumbrances which may be existing
*   *   *  "

The section then sets forth six exceptions. The first has reference to liens arising under the laws and Constitution of the United States. The second reads as follows:

"Second. Taxes, within six years after they have

been entered upon the tax duplicates and become due and payable.''

The other exceptions are immaterial in this case.

Section 8572-89 provides that ''No statutory or other lien of whatever kind or nature except judgments in the United States courts and taxes shall affect the title to registered land, until after the same is noted upon the registered certificate of title.''

Section 8572-56 provides that, ''when'' the council of a municipality has passed an ordinance levying a special assessment to pay the cost and expense of a public improvement, and registered lands are affected thereby, ''the clerk of the board or council passing such ordinance, resolution or order or issuing such certificate, shall file in the recorder's office a notice of the passage or issuance thereof giving a list of the lands assessed, or to be assessed and a memorial thereof shall thereupon be noted by the recorder on the register of each certificate of title for such land. *Unless* there is filed with the recorder such notice and list of lands, registered lands shall not be liable for such assessments.'' (Italics ours.)

From the above three sections it is clear that the Legislature intended *to make and did make some* distinction concerning the collection of taxes and assessments on registered land, by requiring a notice of special assessments *to be* entered as a memorial on the register of the title of registered land, and specially excepting taxes from that requirement.

However, it will be noted that the registered land law does not in any way change the method by which a municipality may make public improvements and assess the cost and expense therefor upon private

property when it is registered land, and provides no independent method of making or assessing the cost of such improvement upon registered lands, but only provides an additional step or act to be done in order to make registered land liable for such assessments; so that, in order to make registered lands liable for such assessments, the assessments must be levied the same as upon unregistered land, and then, in addition thereto, the steps set forth in the registered land law (Section 8572-56) must be complied with; in other words, the two laws must be taken together and both complied with to make registered lands liable for such assessments.

The validity of the assessing ordinance or the certification of the assessment to the county auditor is not affected by the provisions of said Section 8572-56. The only effect of that section is that registered land is not liable for a special assessment unless such notice is filed with the county recorder and a memorial of it placed upon the register of the title.

It will be further noted that Section 8572-56 provides merely that, "unless" the clerk of council files with the county recorder a notice giving a list of registered lands assessed, such lands shall not be liable for such assessments, but that the sections of said Registered Land Act, providing how involuntary liens—such as judgments, attachments, and *lis pendens*—may be acquired, provided that no such liens "shall attach" and no suit be a *lis pendens* "until" a certificate, as required by the respective sections, has been filed with the county recorder and a notation or memorial thereof entered upon the registered certificate of the title.

It will be further observed that Section 8572-56

does not fix any definite time within which the notice required by said section shall be filed with the recorder, and says nothing about any time when the lien of the assessment shall attach, and *does not say* that assessments *shall not* attach to registered land *until* said notice is filed with the county recorder, and that it does not in any way change the lien of the assessment, or the time when the lien attaches to the land, or change the liability of registered land from that of unregistered land for the assessment, if such notice giving a list of registered lands affected thereby is filed by the clerk of council with the county recorder.

Furthermore, Section 8572-81 of the Registration of Land Law, provides:

"Registered land, and ownership therein, except as in this act otherwise provided, shall in all respects be subject to the same burdens and incidents which attach by law to unregistered land. The provisions of this act shall not relieve registered land or the owners thereof * * * from liability to any lien of any description established by law on land and the buildings thereon, or the interest of the owner in such land or buildings, * * * or to change or affect in any way any other rights or liabilities created by law and applicable to unregistered land, except as otherwise expressly provided in this act."

And Section 8572-101 of said Registration of Land Act provides that "this act shall be construed liberally for the purpose of effecting its general intent."

It is therefore clear that, when a special assessment is properly made and certified by the clerk of the council to the county auditor, who places it upon the tax duplicate under said Section 3892, and a

notice of such assessment, giving a list of registered lands thereby affected, is duly filed with the recorder, such assessments have the same class and the same lien on registered lands as they have on unregistered land, and are collected by the county treasurer in the same manner and at the same time as assessments upon unregistered land and other taxes.

In the case of *Makley* v. *Whitmore*, 61 Ohio St., 587, 56 N. E., 461, which was decided in 1900, before the registered land law was passed, and which thus had reference only to unregistered land, the court held that installments of assessments for improvements which are due and payable within the year next after the last day of September in any year should be placed upon the tax duplicate for such year and paid out of the proceeds of a judicial sale made after said last day in September in any year, as provided as to other taxes by Section 2854, Revised Statutes, now Section 5692, General Code, and that installments not so due and payable should not be placed upon the annual duplicate until they become so due and payable, and that purchasers at judicial sales take such real estate burdened with the lien of such unmatured assessments. The date of reckoning is fixed as the last day in September by reason of the provisions of Section 2595, General Code, which reads as follows:

"On or before the first day of October of each year, the county auditor shall deliver to the county treasurer a true copy or duplicate of the books containing the tax list required to be made by him for the year."

Said Sections 2595 and 5692 read exactly as they

did when the *Makley case* was decided, so far as this case is concerned. In the opinion in the *Makley case,* Judge Burkett said, at pages 595 and 596 of 61 Ohio State, 56 N. E., 461, 463, that "The lien of a municipality on real estate for legal assessments remains on such real estate unaffected by sales or transfers, and can be collected the same as other taxes, and in case of a sale under judicial process such municipality is neither a necessary nor proper party, for the mere purpose of having assessments paid out of the proceeds of sale, because the installments upon the annual duplicate of the treasurer will be paid out of the proceeds of the sale, when the sale is made on or after the first day of October, and if made before that day the lien will continue upon the lands sold, to be paid by the purchaser, and if not paid, to be collected from the lands in his hands the same as other taxes."

Having found that when the notice giving the list of registered lands affected has been filed with the recorder, as provided by Section 8572-56, registered lands are in the same class and subject to the same burdens as unregistered land, it is apparent that the rule announced in *Makley* v. *Whitmore, supra,* has application to registered as well as unregistered lands when the provisions of said Section 8572-56 have been complied with. The holding of the Supreme Court in the *Makley case* has, ever since its announcement, been recognized and followed by all the courts in Ohio as a very just and equitable rule, and we find nothing in the registered land law, other than the provisions of said Section 8572-56, that in any way tends to conflict with it.

Having shown that private lands are subject to

special assessments at any time the methods provided by the Legislature are invoked by the proper authorities, that special assessments are taxes for collection purposes, that the lien thereof is unaffected by sales and transfers, and that registered land is subject to the same burdens as unregistered land when said Section 8572-56 has been complied with, and having in mind that it is the duty of courts to harmonize the several sections of the Code which have a seeming conflict, so as to give force and effect to all the sections, what is the fair and reasonable construction to be placed on Section 8572-56, in reference to the time when the notice giving a list of the registered lands affected must be filed with the recorder of the county to carry out the intention of the Legislature?

The general purpose of the registration law seems to be variously stated by different authorities. Mr. Torrens, who is said to have been the originator of the modern registration of land titles, says its purposes are "to simplify, quicken and cheapen the transfer of real estate and to render titles safe and indefeasible." Some courts hold that its purpose is "for simplifying the title to and the dealing with estates in land." Others hold that its purpose is "to create an indefeasible title in the person adjudged to be the owner," and that "the basic principle of the system is the registration of the title to land instead of registering only the evidence of such title."

It would seem, from a careful reading of the Registration of Land Law as adopted in Ohio, that its purpose and scope include not only all of the above-mentioned purposes, but that it is also no doubt in-

tended for the information and benefit of persons dealing with the owner of a registered title, such as persons who may desire to know his financial responsibility, or to purchase such real estate, or to obtain a lien upon it, either voluntary or involuntary on the part of the owner. Indeed, the provisions of some of the sections of the registration law indicate that they are intended more especially, if not entirely, for the information or benefit of purchasers or lienholders or persons dealing with the owner, rather than for the benefit of the owner himself.

Section 8572-56 is one of that class of sections. It is apparent from the wording of this section that, if the same person remained the owner of the registered title from the time the assessment for a public improvement is levied until it is entirely paid, it could make no difference to such owner and be of no injury or prejudice to him if the clerk of the council failed to certify such assessment to the county recorder, as such owner is amply notified of such assessment under the requirements of the laws under which it was made. It is thus clear that this section must have been intended more especially, if not entirely, for the benefit and information of persons dealing with the owner or desiring to purchase such land or obtain a lien upon it, either voluntary or involuntary, and for the purpose of effecting the priority of liens as between such assessments and third persons, but that the lien of the assessment remains, so far as such owner is concerned, and is collected as other taxes when properly certified to the county auditor.

We are therefore clearly of the opinion that the only reasonable construction to be given to Section

8572-56 is that, when such notice, giving the list of registered lands affected, has been filed with the county recorder prior to the second Monday in September (being the day on which the clerk of council shall certify such assessment to the county auditor, as provided in Section 3892, General Code), next after the time the assessment or any of the installments become due and payable, and when the clerk of council is authorized to certify the same to the county auditor (*Land & Bldg. Co.* v. *McKnight*, 17 Ohio App., 187), so that the county auditor can place them upon the tax list and a duplicate of the list of all taxes and assessments to be filed by him with the county treasurer, for collection on or before the first day of October next after said second Monday in September, as provided by Section 2595, General Code, all installments for such assessment retain their lien upon registered the same as unregistered land, and are payable according to the rules laid down in the case of *Makley* v.*Whitmore, supra,* but that, when such notice is not filed prior to such second Monday in September next after the time such assessment or any installment thereof becomes due and payable, and is thereafter filed, installments due and payable prior to the time of the filing of such notice with the county recorder, and not paid, lose their preference or lien as against purchasers or mortgagees in good faith who acquire their title after the passage of the assessing ordinance and before the filing of such notice with the county recorder, but that installments not due and payable until after the filing of such notice retain their preference the same as if such notice had been filed prior to the second Monday in September next after the

assessing ordinance became effective and the assessment or any of the installments thereof became due and payable.

However, we are inclined to the opinion that, if the county auditor has not filed the tax duplicate with the county treasurer prior to the first day of October, and the clerk of council certifies special assessments to said auditor under Section 3892, General Code, and files a notice and list of registered lands affected by such assessments with the county recorder under Section 8572-56, prior to said first day of October but after the second Monday in September, such assessments would retain their lien on registered land.

Moreover, to carry the contention of counsel for the loan company to its logical conclusion, it would mean that special assessments cannot be a lien on registered lands as against a mortgage or other lien entered as a memorial on the register of the title prior to the time of the filing of the notice required by said Section 8572-56, and it would enable the owner of registered lands to avoid special assessments by having a mortgage upon his property to cover the amount for which it would sell at public sale. This surely was not the intention of the Legislature, in view of the holding in *Makley* v. *Whitmore, supra,* and the provisions of Sections 8572-81 and 8572-101, General Code, as such construction would completely nullify these two sections.

Applying these conclusions to the facts in the instant case, we hold that the installment for the Broad street assessment, placed upon the tax duplicate for 1929, is not entitled to be paid out of the proceeds of sale, and neither is it entitled to be en-

tered as a memorial on the new certificate to be issued to the purchaser, but that the installment for the Eighteenth street assessment, placed upon the tax duplicate for December, 1929, is payable out of the proceeds of the sale.

We further hold that the six remaining annual installments for the Broad street assessment, and the remaining nine installments for the Eighteenth street assessment, which were not due and payable and are not entitled to be placed upon the tax duplicate until they are so due and payable, should be carried forward and placed as a memorial upon the new certificate to be issued to the purchaser at sheriff's sale.

A decree may be drawn in accordance with this opinion, which will be similar to the one in the common pleas court, and the case will be remanded to that court to carry the same into execution.

*Decree accordingly.*

PARDEE, P. J., and WASHBURN, J., concur.